UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 13-CR-1002-L |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| JOSE QUIJADA-LEYVA, | ) | |
| Defendant. | ) | |

Defendant is charged in a one-count indictment with attempted entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b). Defendant has been physically removed from the United States pursuant to a removal order twice. An immigration judge first ordered Defendant removed on June 28, 2011, after which he was physically removed from the United States on August 24, 2011. On November 5, 2011, the June 28, 2011, order of removal was reinstated, and Defendant was physically removed on May 9, 2012.

On May 6, 2013, Defendant filed a Motion to Dismiss the Indictment on the basis that there is no valid order of removal upon which the government may base its prosecution. Defendant argues that the Immigration Judge ("IJ") never advised him during the 2011 removal proceedings of his right to seek pre-conclusion voluntary departure under 8 U.S.C. § 1229a, I.N.A. § 240B(a), thereby violating

his due process rights. On June 9, 2013 the Government filed an Opposition, and on June 13, 2013, Defendant filed a Reply.

## **FACTUAL BACKGROUND**

Defendant is a 23-year-old native and citizen of El Salvador. (Mot. 2.) When Defendant was very young, Defendant's father, a former police officer and soldier in the Salvadorian military, left El Salvador for the United States where he applied for, and was granted, asylum. (*Id*., Ex. B.) Defendant was forced to quit school early and begin working to support his family after his father came to the U.S. (*Id*.) When Defendant was 14 years old, he left El Salvador and made the journey to the Mexican border with the United States to reunite with his father. (*Id*., Ex B.) With the help of a "coyote" he was smuggled across the border into Arizona, where his father met him and paid the coyote $2,000. (*Id*.) Defendant and his father returned to Los Angeles, where his father lived. (*Id*.) In addition to his father, Defendant stated he also has a half brother who lives in Virginia. (*Id*.)

Defendant claimed that he was very happy to be near his father, but that his father was very tough on him and got angry because of the way Defendant dressed, and because Defendant did poorly in school. (*Id*., Ex B) Defendant stated that he, "worked very hard in school, [but] it was hard for me to succeed because I don't speak English well and it was hard for me to follow the classes." (*Id*., Ex. B.) Despite these difficulties, Defendant completed the 11th grade. (*Id*.) In 2007, Defendant's father remarried. (*Id*., Ex. B.) Defendant stated that his new step-mother imposed rules on when he could be in the house which made it difficult for Defendant to do his schoolwork. (*Id*.) The situation deteriorated, and eventually Defendant's father kicked his son out of the house. (*Id*., Ex. B.) Defendant lived with the ex-girlfriend of his father for about two years, and then lived on the street for three years. (*Id*. Ex B.) During this time, Defendant began spending time with other Salvadorian youths, some of whom belonged to the "MS-13" gang. (*Id*.) As Defendant stated, "I joined the gang, unfortunately, because they were the only

ones that supported me and gave me friendship." (*Id*. Ex. B.) Defendant got a gang tattoo on his leg, but stated that the location of the tattoo indicated he was not as deeply committed to the gang as members who got tattooed higher up on the body. (*Id*.)

After he joined the gang, Defendant had a few brushes with the law. In 2007, he was served with a gang injunction. (*Id*.) In 2008, he was arrested in Las Vegas for attempting to cash a forged check. (Oppo. Ex 1.) That same year, Defendant returned to California and incurred a contempt of court conviction for violating his gang injunction. (Mot. Ex E.)

After serving 8 months in custody, Defendant stated he realized he "wanted to change his life" and upon his release he went to work in the fields in 2010. (*Id*. Ex B.) According to Defendant, he left the gang to start a better life, and the gang was not upset that he left. (Mot. Ex B.) After only 9 months he had to quit his agriculture job because his employer demanded that Defendant show proof of an "El Salvadorian ID," which he did not have. (*Id.*) Defendant stated that he returned to Los Angeles to obtain the required ID, but was arrested. (*Id*.)

## **IMMIGRATION PROCEEDINGS**

On March 30, 2011, the Department of Homeland Security ("DHS") served Defendant with a Notice to Appear ("NTA") alleging that Defendant (1) was not a United States citizen, (2) was a native and citizen of El Salvador, (3) entered the United States at an unknown place and date, and (4) was not admitted or paroled into the United States after inspection by an immigration officer. (Mot. 3 Ex A.) At a master calendar hearing on April 20, 2011, before an Immigration Judge ("IJ"), Defendant admitted each of the allegations and conceded his removability under Immigration and Nationality Act Section 212(a)(6)(A)(I). (*Id*. Ex E.) The IJ immediately thereafter conducted a bond hearing, for which no record exists. However, once the removal proceedings commenced again, the IJ stated "Okay, now, sir, at the bond hearing you said you wanted to apply for asylum,

withholding, and Convention Against Torture, is that right?" (*Id.*) Defendant responded that he did want to pursue those types of relief, and the IJ gave him the relevant forms and continued the case until May 23, 2011, to allow Defendant sufficient time to complete the forms. (*Id*. at 21-22.) The IJ asked whether Defendant had the money to return to his country and a passport, to which Defendant answered he did. (*Id*. at 19)

Defendant filed his completed applications for asylum, withholding and relief under Convention Against Torture on May 23, 2011, and the case was continued to June 28, 2011 for a hearing on the merits. (*Id*. at 23.) At the June 28, 2011, merits hearing, Defendant produced his affidavit, and testified. (*Id*. at 28, 32-51.) The IJ rendered a detailed oral decision, denying the application for asylum, withholding of removal, and relief under Convention Against Torture. (*Id*. Ex D.) The judge further denied Defendant's request for post-conclusion voluntary departure, exercising his discretion and finding Defendant ineligible for that type of relief because Defendant stated he was not sure whether he could get the money and a passport to return to his country, and that it was unclear whether his time in jail for a bad check and violating parole would constitute an aggravated felony, and therefore it was uncertain whether Defendant would have any future legal immigration prospects in this country. (*Id*. at11-12.) Defendant was removed to El Salvador on August 24, 2011. (*Id*. Ex F.)

### May 2012 Removal

On November 25, 2011, DHS issued Defendant a notice of intent to reinstate the June 28, 2011 removal order. (*Id*., Ex F.) Defendant was subsequently removed pursuant to that order on May 9, 2012. (*Id*., Ex. G.)

### DISCUSSION

A defendant in a 8 U.S.C. § 1326 prosecution "has a Fifth Amendment right to collaterally attack a removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047

(9th Cir. 2004). To succeed in a collateral challenge to a removal order, a defendant must demonstrate: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id*. An underlying removal order is "fundamentally unfair" when: (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Id.*; *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). Due process is violated if an alien in a removal proceeding is not informed of "his or her ability to apply for relief from removal." *Ubaldo-Figueroa*, 364 F.3d at 1050.

An alien, however, is barred from collaterally attacking an underlying deportation order "if he validly waived the right to appeal that order" during the deportation proceedings. *Arrieta*, 224 F.3d at 1079. But if the IJ failed to inform Defendant of available relief from deportation, his waiver is not considered and intelligent. *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004); *Ubaldo-Figueroa*, 364 F.3d at 1050 (stating failure to inform the alien of his eligibility for relief from removal "is a denial of due process that invalidates the underlying deportation proceeding").

Once a due process violation is found, a defendant must show he was prejudiced by the violation. *Id.* A defendant has the burden to prove prejudice. *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc). To carry that burden, he must show he had "plausible grounds for relief from deportation." *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998). "Establishing 'plausibility' requires more than establishing a mere 'possibility'." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). "To show 'plausible grounds' for relief, an alien must show that, in light of the factors relevant to the form of relief being sought, and based on the 'unique circumstances of [the alien's] own case,' it is

plausible, (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* (Citation omitted).

### **Due Process**

Defendant argues that the 2011 removal proceeding is invalid because the IJ did not advise him of his right to seek pre-conclusion voluntary departure under 8 U.S.C. § 1229a, I.N.A § 240B(a) despite his apparent eligibility for that type of relief, thereby violating his due process rights. (Mot. 1-2.) Defendant further contends that because the removal order was constitutionally deficient, it cannot serve as the predicate for his current prosecution under section 1326, and that the due process violation in the 2011 deportation excused him from the exhaustion requirement under section 1326(d)(1); deprived him of the opportunity for judicial review under section 1326(d)(2); and rendered the deportation fundamentally unfair under section 1326(d)(3). (*Id.* at 4.)

The Government argues that the proceeding was not fundamentally unfair because the IJ informed Defendant of his "apparent eligibility" for relief, which included asylum pursuant to 8 U.S.C. § 1158; withholding of removal under 8 U.S.C. § 1231(b)(3); and the Convention Against Torture. (Oppo. at 9.) The Government contends that the IJ was under no obligation to also present Defendant with the opportunity to apply for voluntary departure as a form of relief because it would be illogical for the IJ to offer a lesser form of relief which, if granted, would return the alien to the country from which he is seeking asylum. (*Id.* at 11-12.) The Government contends that the IJ was required to comply with a heightened standard for handling Defendant's request for asylum pursuant to 8 C.F.R. section 208.5 which the IJ did here, and that in light of Defendant's clear desire to seek asylum the requirement that the IJ inform him about voluntary departure was waived. (*Id.* at 12.)

A defendant may be granted voluntary departure prior to the completion of removal proceedings pursuant to 8 U.S.C. § 1240.26 if the alien (a) requests the relief prior to or at the master calendar hearing at which the case is initially

calendared; (b) does not request any other types of relief; (c) admits he is removable; (d) waives appeal of all issues, and (e) has not been convicted of a crime as outlined in "section 101(a)(43) of the [Immigration and Nationality] Act, and is not deportable under section 237(a)(4)." 8 U.S.C. §1229c(a)(1); 8 C.F.R. § 1240.26(b)(1)(i)(A). To qualify for pre-conclusion voluntary departure, an alien must also present a passport or other sufficient travel documents, or satisfy the IJ that the alien is "making diligent efforts to secure" such documents.[1] *See In re Arguelles*, 22 I&N. Dec. 811, 816 (June 7, 1999).

Defendant argues that he was eligible for pre-conclusion voluntary relief because he had the ability to secure funds and a passport to return to El Salvador, did not have an aggravated felony or terrorism conviction, and had not previously been granted voluntary departure, however, the IJ effectively precluded him from seeking this type of relief by allowing him to apply for asylum. Where the evidence before an IJ gives rise to an inference that a person in removal proceedings might be eligible for relief from deportation, the IJ "<u>must</u> advise the alien of this possibility and give him the opportunity to develop the issue." *Arrieta*, 224 F.3d at 1079 (emphasis added). Further, the requirement is codified in 8 C.F.R. § 1240.11(a)(2) which states that the "immigration judge <u>shall</u> inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an

---

[1]In contrast, an IJ may only grant post-conclusion voluntary departure upon a finding that:

(A) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a) of this title;
(B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure;
(C) the alien is not deportable under section 1227(a)(2(A)(iii) or section 1227(a)(4) of this title; and
(D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

8 U.S.C. § 1229c(b)(1)(A)-(D).

opportunity to make application during the hearing." 8 C.F.R. 1240.11(a)(2)(emphasis added). The IJ in the present case was aware that Defendant requested asylum, but also knew after inquiring, that Defendant claimed he had the money and a passport to get back to his home country. (Mot., Ex E at 19.) There was no evidence in the record that Defendant had been convicted of an aggravated felony or terrorist activities, or that he had previously been granted voluntary departure. From the record before the IJ, Defendant was apparently eligible for pre-conclusion voluntary departure and the IJ should have advised Defendant about this form of relief and allow him the ability to choose whether to pursue it above all others.

It is possible that the IJ would not have considered furthering the advisement of pre-conclusion voluntary departure due to Defendant's fear of returning to El Salvador, but as shown above, it appears there is a requirement for the IJ to inform about pre-conclusion voluntary departure notwithstanding the reasonable rationale of the IJ. The IJ's considerable efforts to be certain Defendant understood his appellate rights, and allowance of time to pursue this relief, does not cure the IJ's failure to inform Defendant of his right to request pre-conclusion voluntary departure. As Defense counsel persuasively argued at the motion hearing held on June 17, 2013, the IJ's duty was similar to the duty of a district judge to advise a defendant in a Rule 11 plea colloquy proceeding that defendant has a right to trial, cross examine witnesses and pursue evidentiary issues if he chose to go to trial. *See United States v. Ross*, 511 F.3d 1233, 1235 (9th Circ. 2008) (A district court is bound to advise a defendant of the rights and opportunities afforded to him pursuant to Rule 11.) Although the IJ proceeded reasonably to fulfill its heightened duty in light of Defendant's request for asylum, in the strictest sense, the IJ's failure to inform Defendant of his option to instead pursue pre-conclusion voluntary departure violated Defendant's due process rights. *United States v. Melendez- Castro*, 671 F.3d 950, 954 (9th Cir. 2012).

//

**Prejudice**

When an IJ fails to advise an alien of his apparent eligibility for a specific type of relief, the alien must establish prejudice under the second prong of § 1326(d)(3) which requires the alien to make an additional showing and demonstrate "plausible grounds" for relief. *Rojas- Pedroza*, 2013 WL 2320307 at 6. "Where the relevant form of relief is discretionary, the alien must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *United States v. Barajas–Alvarado*, 655 F.3d 1077, 1089 (9th Cir.2011). The Ninth Circuit has applied a two-step process in making this determination. First, the court must identify the pertinent factors informing the IJ's exercise of discretion in its determination of an alien's request for voluntary departure. *See* id. at 1089–90. Second, the court must determine whether, "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* at 1089. In making this determination, the focus is not on general statistics but instead on whether aliens with similar circumstances received relief. *Rojas-Pedroza*, 2013 WL 2320307 at 6. An IJ considering either type of voluntary departure balances "favorable and unfavorable factors" with favorable factors "includ[ing] long residence, close family ties to the United States, and humanitarian needs," and unfavorable factors including "the existence, seriousness, and recency of any criminal record" plus "any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* However, "an IJ has 'broader authority to grant' pre-conclusion voluntary departure than some other forms of immigration relief. *In re Arguellos- Campos*, 22 I.&N. Dec. 811, 817 (B.IA. 1999). In considering the balancing act required of a reviewing court, the Ninth Circuit stated in the unpublished decision in *United States v. Alcazar- Bustos*, that "removable aliens seeking voluntary departure fall on a continuum between those who have no criminal record at all and significant positive ties to the United States, and those who have

serious record and no countervailing equities." 382 Fed.Appx.568 (9th Cir. 2010). In the present case, Defendant has a limited number positive equities in his favor, but similarly, has few negative equities weighing against him, making the exercise of discretion a subtle and nuanced task.

It is clear that aliens with more significant criminal histories than Defendant's have been able to demonstrate that it was plausible an IJ would have granted them pre-conclusion voluntary departure. The Ninth Circuit in *Alcazar-Bustos* found that it was plausible that an IJ would have granted the alien pre-conclusion voluntary departure where defendant lived in the U.S. for the majority of his life, was married to a U.S. citizen, and had a child who was a U.S. citizen, but he had three juvenile adjudications and was convicted twice of firearm possession while a juvenile which resulted in prison terms. *Id.* Despite a criminal history more serious than Defendant in the current case, the appellate court found defendant was prejudiced by the finding of the IJ that he was ineligible for that type of relief. *Id.* at 3.

In a case with similar equities to the present case, the Southern District of California found that the defendant had a plausible claim for pre-conclusion voluntary departure where the defendant came to the United States at a young age and lived in the United States for most of his life, was raised by his mother and step-father, neither of whom were United States citizens but lived in the U.S., graduated from high school in the United States and worked in construction. *United States v. Perez*, 2011 WL 3475413 (S.D.Cal. 2011). The defendant had one minor scrape with the law, a conviction for being an adult driving without a license and was sentenced to 12 months probation. *Id.* In finding a due process violation and prejudice, the court stated "[c]omparing the equities of this case and *Alcazar-Bustos*, the Court concludes that Defendant had a plausible claim for pre-conclusion voluntary departure." *Id.* The Ninth Circuit in *United States v. Arrieta*, found that a defendant who had been convicted of attempted rape but had family ties to the Unites States could plausibly have been granted a waiver of deportation, a form of relief which required a higher

showing than that for pre-conclusion voluntary departure. WL 4470875 (9th Cir. 2012).

In contrast, the Ninth Circuit in *Rojas-Pedroza*, determined that defendant failed to show prejudice after the court considered the equities, including the fact that defendant arrived in the United States when he was fourteen, had lived in the U.S. intermittently for about seven years, that he had siblings residing in the United States, but his parents and daughters lived in Mexico. *Id.* While in the United States, defendant was convicted twice of driving under the influence, in addition to unlicensed driving, possession of an open container while driving and the failure to pay a fine, as well as aiding and abetting the transportation of illegal aliens in violation of 8 U.S.C. §1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II). *Id.* The court noted that defendant had no positive equities in his favor other than his intermittent stays in the United States, but that he had numerous negative equities and concluded "[b]ased on these factors, it is not plausible that an IJ would have exercised discretion in [defendant's] favor at his [deportation] hearing." *Id.* at 8.

Looking to BIA cases for further guidance, a similarly situated alien had his denial of voluntary departure reversed where the alien was 19 years old and had lived in the U.S. for ten years, and had no criminal history. *In the Matter of Maldonado-Hernandez,* 2010 WL 4509754 (BIA Oct. 22, 2010). In contrast, the BIA affirmed the denial of voluntary departure in the *Matter of Martinez-Hernandez*, 2011 WL 4446883 (BIA Sept. 6, 2011) where the alien had no significant length of residence in the U.S., family tires or humanitarian needs.

Here, Defendant resided continuously for 7 years in the United States, roughly one-third of his life. Defendant has blood relatives in the United States, including his father, who despite their strained relationship, had previously demonstrated his willingness to help his son assimilate into American culture. Defendant completed the 11th grade in the United States even with the language barrier and significant

11

challenges in his personal life. In addition, Defendant swore in his asylum application that he had left the gang and started picking vegetables in an effort to change his life unlike the defendant in *Rojas* who had no work history. While that job lasted only 9 months, it was an indication that Defendant was attempting to be productive with his life.

Defendant has had a few scrapes with the law including a 2007 gang injunction, a 2008 arrest for trying to cash a fake check, and in the same year, a contempt of court conviction for violating the gang injunction. However, Defendant's criminal history is far less serious and substantial than the defendants in *Alcazar-Bustos*, or *Rojas-Pedroza*, where courts have found similarly situated aliens deserving of relief. Of greater concern is Defendant's membership in the MS-13 gang. However, gang membership alone is not enough to foreclose pre-conclusion voluntary departure. In *Alcazar-Bustos*, the Ninth Circuit found that the defendant had shown it was plausible that an IJ would have granted him pre-conclusion voluntary departure despite defendant's associations with gang members, drug use, sporadic work history and two convictions for firearm possession that resulted in prison terms. *Alcazar-Bustos*, 382 Fed.Appx. 568, 570 (9th Cir. 2010). There, the appellate court found that in light of the low threshold required for pre-conclusion voluntary departure, defendant met his burden to show prejudice arising from a due process violation. *Id.*

Considering the equities in the present case, Defendant has demonstrated that an IJ could have found he had a plausible case for relief via pre-conclusion voluntary departure. *See United States* v. *Arce Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999) Consequently, Defendant has shown he was prejudiced by the IJ's failure to inform him of pre-conclusion voluntary departure, and the failure to do so rendered the deportation fundamentally unfair.

//

**Exhaustion**

12

Defendant contends that he is excused from demonstrating exhaustion of administrative remedies because the IJ failed to inform him of pre-conclusion voluntary departure, and that as a result, his wavier of the right to appeal was not considered and intelligent, citing. *Arrieta*, 224 F.3d 1076, and *Ubaldo-Figueroa*, 364 F.3d at 1050.

The Government counters that the Motion to Dismiss should be denied because Defendant did not appeal his order of removal to the BIA, and therefore, he has not exhausted administrative remedies. According to the Government, the IJ exhaustively explained to Defendant his right to appeal, and even reserved the right for Defendant when Defendant was uncertain whether to reserve the right on his own. Therefore, the Government argues that Defendant's failure to appeal to the BIA was "considered and intelligent."

Here, as Defendant points out in his Reply brief, he did appeal the decision of the IJ on July 5, 2011, although he later withdrew the appeal on July 21, 2011. (Reply Ex A & B.) Further, even had he not filed the appeal, Defendant could not have made a considered and intelligent decision about his right to appeal regarding pre-conclusion voluntary departure because the IJ never informed him of the availability of pre-conclusion voluntary departure. *See Arrieta*, 224 F.3d 1079 (9th Cir. 2000) (failure of an IJ to inform an alien of the right to apply for a particular form of relief from deportation resulted in due process violation because defendant could not make a considered and intelligent decision about his right to appeal.) While it is true the IJ spent a great deal of time explaining to Defendant his right to appeal, and did, indeed, reserve appeal rights on Defendant's behalf, Defendant is excused from the exhaustion requirement due to the due process violation stemming from the IJ's failure to inform him of pre-conclusion voluntary departure.

//

**Judicial Review**

Defendant argues that the 2011 removal proceedings deprived him of judicial review because he did not know or understand that he might have been eligible for pre-conclusion voluntary departure. The Government cursorily states that Defendant was not deprived of an opportunity for judicial review due to his failure to exhaust administrative remedies.

"[A]n alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *Arrieta*, 224 F.3d at 1079 . In light of this Court's finding that the IJ deprived Defendant of his due process rights by failing to inform him of the possibility of relief for pre-conclusion voluntary departure, the 2011 removal proceeding also deprived him of his opportunity for judicial review.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## **CONCLUSION AND ORDER**

In light of the above, the Court finds that Defendant's due process rights were violated in his 2011 removal proceedings due to the IJ's failure to advise him of his right to apply for pre-conclusion voluntary departure, notwithstanding the IJ's conscientious efforts to facilitate Defendant's application for asylum. The Court further finds that Defendant is excused from the exhaustion requirement and that the 2011 removal proceedings improperly deprived him of his opportunity for judicial review. Accordingly, Defendant's Motion to Dismiss the Indictment is **GRANTED** and count one of the Indictment (attempted entry after deportation, 8 U.S.C. § 1326(a) and (b)) is dismissed.

IT IS SO ORDERED.

DATED: July 8, 2013

M. James Lorenz
United States District Court Judge